UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CYNTHIA MASSE,**

    **Plaintiff,**

v.                                                    Case No. 8:06-CV-1259-T-EAJ

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**

    **Defendant**
_____/

**FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under the Act.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (the "ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2003). Substantial evidence is "such relevant

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 10).

evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff filed an application for DIB on February 4, 2003, claiming an onset of disability on September 26, 2002, due to anemia, hypertension, a leaking heart valve, phlebitis, sleep apnea, and bipolar disorder. (T 17, 48, 52)  Plaintiff's application was denied initially, upon reconsideration, and by the ALJ in a decision issued on January 27, 2006. (T 17-23)  The ALJ found that Plaintiff was not eligible for DIB because she was not disabled at any time through the ALJ's decision. (T 22)  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (T 3-6) Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits after exhausting all administrative remedies (Dkt. 1).  The Commissioner's decision is ripe for review under the Act.

At the time of the October 20, 2005 hearing, Plaintiff was forty-eight years old and had an eighth-grade education. (T 590)  Her past work experience includes work as an executive

housekeeper and warehouse-order packer. (T 52, 591-92) Plaintiff asserts that her impairments have rendered her unable to work since September 26, 2002. (T 17, 52)

To determine if Plaintiff is disabled, the ALJ performed a five-step evaluation.  First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability on September 26, 2002. (T 18)  Second, while Plaintiff's ailments, including bipolar disorder, hypertension, status post-gastric bypass surgery, status post-resection of benign breast lump, and severe hernia, were "severe," the ALJ determined that they did not meet or medically equal those listed in the Listing of Impairments. (T 19-20)  Third, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") for a restricted range of sedentary work.[3] (T 20)  Fourth, based upon Plaintiff's RFC, the ALJ found that she cannot perform her past relevant work. (T 21)  Relying on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff has no transferable skills from any past relevant work.  Nonetheless, the ALJ found that Plaintiff could adjust to work as a medical-supply assembler, a scale attendant, and a surveillance system monitor, all of which are available locally in significant numbers. (Id.) Accordingly, the ALJ found that Plaintiff was not disabled at any time through the date of her decision and denied Plaintiff's claim for DIB under the Act. (Id.)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

---

[2] Sedentary work, defined at 20 C.F.R. § 404.1567(a), "involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

3

## II.

Plaintiff argues that (1) the Commissioner erred by failing to consider the episodic nature of her mental impairment, specifically her inability to perform activities within a schedule, maintain regular attendance and be punctual, and her inability to complete a normal weekday and workweek without interruptions; and (2) the Appeals Council erred by not considering new, material, and non-cumulative evidence submitted by Plaintiff (Dkt. 17).

**A.**     This court will first address Plaintiff's claim that the Commissioner erred by failing to consider the episodic nature of her mental impairment, particularly her bipolar disorder. Specifically, Plaintiff claims that the ALJ erred by not presenting a hypothetical question to the VE to assess the extent to which the episodic nature of Plaintiff's mental impairment affects her ability to perform jobs within her RFC (Dkt. 17 at 8-10). Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence.

In support, Plaintiff points to treatment of her bipolar disorder from March 4, 2003 to May 6, 2005 by the Harbor Behavioral Health Care Institute and to opinions from James LeVasseur, M.D. ("Dr. LeVasseur"), a medical advisor to the State Disability Determination Service.  In his mental RFC assessment, Dr. LeVasseur indicated that Plaintiff would experience moderate limitations in performing activities within a schedule, maintaining regular attendance at work, and being punctual due to her mental impairment. (T 462-63)  Moreover, Dr. LeVasseur opined that Plaintiff would have moderate limitations in completing a normal workday and workweek without interruptions from physiologically-based symptoms. (T 463)

As an initial matter, in formulating Plaintiff's RFC, the ALJ specifically considered Dr. LaVesseur's statements regarding the limitations caused by Plaintiff's bipolar disorder. The ALJ stated:

> Because of her history of bipolar disorder – which involves a mild limitation in the ability to perform activities of daily living, a moderate limitation in social function and in performing activities that require concentration, persistence or pace, and no indication of repeated episodes of decompensation of prolonged duration (Ex. 12F) – not entirely controlled with medication in part because of non-compliance with treatment, the claimant is precluded from performing detailed tasks and is limited to occasional contact with co-workers and the public. The claimant, therefore, has retained the residual functional capacity for a restrict[ed] range of sedentary work.

(T 20) This statement makes clear the ALJ did consider the episodic nature of Plaintiff's mental impairments, and specifically Dr. LaVasseur's opinions.

Nevertheless, the court addresses the adequacy of the hypothetical questions posed by the ALJ to the VE. Essential to evaluating a DIB claim is the ALJ's development of a full and fair record regarding the vocational opportunities available to the claimant, which record should include the ALJ's articulation of specific jobs available to the claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989) (citations omitted). The ALJ's development of such opportunities must be supported by substantial evidence, and "not mere intuition or conjecture." Id. The ALJ may utilize a VE to assist in arriving at these conclusions. See id. at 1202. The ALJ must instruct the VE to consider all of the claimant's severe impairments; otherwise, the ALJ's decision is not supported by substantial evidence. See Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).

At the hearing, the ALJ asked whether there was any work Plaintiff could perform, assuming an RFC to perform a restricted range of sedentary work, specifically assuming her ability to lift, carry, push, and pull is limited to five pounds on occasion and to minimal weight on a frequent basis; Plaintiff can sit for six hours, stand and walk for two in an eight hour day, but would need to

5

alternate positions at will; Plaintiff can never climb, can occasionally balance and stoop, and can never crouch, kneel or crawl; and Plaintiff cannot perform detailed or complex work and can have only occasional interaction with co-workers and the public.[4] (T 601) Based on this RFC, the VE responded that Plaintiff could work as a medical supplies assembler, a scale attendant, or a surveillance system monitor. The VE testified that all of these positions were available locally. (T 602)

The limitations proffered by Plaintiff – that she is limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual – are not specifically mentioned in her RFC. However, the ALJ posed questions that addressed Plaintiff's mental impairments: first, stipulating that "[Plaintiff] is limited to only occasional, that is, up to one-third of the day interaction with co-workers and the public" and, second, that "[Plaintiff] can have only occasional interaction with co-workers and the public." (T 600-01) Moreover, as stated above, in reaching the conclusion that Plaintiff has the RFC for a restricted range of sedentary work, the ALJ specifically considered Dr. LaVesseur's statements regarding the limitations caused by Plaintiff's bipolar disorder. (T 20)

Accordingly, the series of hypothetical questions posed to the VE in this case comprehensively describes Plaintiff's impairments and is supported by substantial evidence. See Wind v. Barnhart, 133 Fed. Appx. 684, 694 (11th Cir. 2005) (finding that even though the ALJ did not explicitly inquire as to each of the claimant's impairments and their limitations, the ALJ's hypothetical question accurately comprised all of the claimant's impairments) The determination of a claimant's RFC is a medical determination reserved for the Commissioner. See generally 20

---

[3] The ALJ considered but rejected the RFC proffered by the state agency that Plaintiff could perform a limited range of light work. (T 21)

C.F.R. §§ 404.1545(a), 404.1546. As previously noted, the court finds no error in the ALJ's consideration of Dr. LeVasseur's opinion in determining Plaintiff's RFC.

Accordingly, the ALJ did not err in failing to pose hypothetical questions to the VE regarding the episodic nature of Plaintiff's mental impairments.

**B.** Next, this court will consider whether the Appeals Council erred by not considering evidence Plaintiff contends is new, material, and non-cumulative. Plaintiff claims that the Appeals Council should have reviewed medical records dated October 6, 2005 to January 26, 2006 from Harbor Behavioral Health Care Institute, some of which existed prior to the ALJ decision, but were not submitted to the ALJ for consideration (Dkt. 17 at 10-14). Plaintiff maintains that the records demonstrate a worsening of Plaintiff's mental condition in the weeks prior to the administrative hearing, held on October 20, 2005.

The records at issue show that on October 6, 2005, Plaintiff complained to her physician at Harbor Behavioral Health Care Institute that she had her "worst month ever." (T 575) Later, on December 15, 2005, she complained to the same physician of irritability and aggravation. (T 578) Plaintiff further stated in January 2006 that she was particularly sensitive to noises, experienced hallucinations, was seeing shadows, and was having trouble "dealing with people." (T 582) On this date, her physician estimated her global assessment of functioning ("GAF") score at fifty.[5] (T 582) The Appeals Council considered these medical records when it denied Plaintiff's request for review on May 26, 2006. (T 6)

Both parties cite the standard for remand for consideration of new evidence under "sentence

---

[4] A GAF score represents a clinician's subjective determination of the "individual's overall level of functioning." See AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 33 (4th ed. 1994). A GAF of 51-60 represents moderate symptoms or moderate difficulties and a GAF of 61-70 represents mild symptoms or some difficulties. Id. at 32-34.

7

six" of the Act (Dkt. 18 at 10; Dkt. 17 at 10-14). The parties contend that sentence six remand is appropriate if Plaintiff can establish that: (1) the evidence submitted to the Appeals Council is new and non-cumulative, (2) the evidence is material such that a reasonable probability exists that it would change the administrative result, and (3) there was good cause for the failure to submit the evidence at the administrative level. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998) (citations omitted), cert. denied, 525 U.S. 1124 (1999).

However, a remand to the Commissioner is proper under sentence six only when new and material evidence that was not incorporated into the administrative record comes to the attention of the district court. In Ingram v. Commissioner of Social Security, __ F.3d __, No. 06-14602, 2007 WL 2385076, *13 (11th Cir. Aug. 23, 2007), the Eleventh Circuit recently clarified that "[s]entence six allows the district court to remand to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to remand for reconsideration of evidence previously submitted to the Appeals Council." In this case, the records dated October 6, 2005 to January 26, 2006 from Harbor Behavioral Health Care Institute fail to meet the criteria for a sentence six remand because they are not new evidence that the Commissioner failed to incorporate into the administrative record. The medical records were properly submitted to the Appeals Council, which considered the evaluation and incorporated them into the administrative record. (T 6) Therefore, remand under sentence six is inappropriate. See Ingram, 2007 WL 2385076 at *13.

Nonetheless, the Treatment Records dated October 6, 2005 to January 26, 2006 from Harbor Behavioral Health Care Institute may be the basis for a sentence four remand. Because Plaintiff challenges the Appeals Council's denial of review as well as the ALJ's denial of benefits, the court reviews whether the Appeals Council's decision to deny benefits is supported by substantial

evidence in the record as a whole, which includes the treatment records dated October 6, 2005 to January 26, 2006 from Harbor Behavioral Health Care Institute. Id. at **10-11.

Between October 6, 2005 and January 26, 2006 – the duration of the period in question – Plaintiff argues that her condition was substantially worse than was presented in the evidence considered by the ALJ. She argues that the Appeals Council erred in refusing to consider medical records to this effect (Dkt. 17 at 10-11).

Most notably, Plaintiff argues that a GAF score of fifty is indicative of a decline in her condition. She points out that the majority of the evidence considered by the ALJ featured GAF scores between fifty-five and sixty. Plaintiff's argument is not persuasive.

GAF scores may have little bearing on an individual's disability status. See AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 1994); see also Cox v. Apfel, No. CIV. A. 99-2296-JWL, 2000 WL 1472729, *9 (D. Kan. Feb. 24, 2000) (citation omitted) ("A low GAF score does not require a finding of disability."). Instead, a GAF score reflects the assessor's opinion regarding an individual's ability to function in social, occupational, or school settings. See id. In this sense, Plaintiff has failed to show how a GAF score of fifty specifically impaired Plaintiff's ability to perform sedentary work. See Seymore v. Apfel, 131 F.3d 152 (table), No. 97-5068, 1997 WL 755386, *2 (10th Cir. Dec. 8, 1997) (finding that a GAF rating standing alone, without indications from therapists that the score impaired the claimant's ability to work or her ability to keep a job, was not evidence of an impairment seriously interfering with the claimant's ability to work).

Moreover, Plaintiff's declining GAF score represents Plaintiff's condition on a particular day during a very limited time frame. While evidence considered by the ALJ included GAF scores that

9

were greater than fifty and, in most cases, between fifty-five and sixty, the ALJ also considered evidence where Plaintiff's GAF score was fifty or below. (T 522, 525, 530-32, 536-39, 541, 545-46, 548, 552, 555-56, 558-61, 564, 568, 572-73)  Accordingly, Plaintiff failed to demonstrate that the GAF scores of fifty, under the circumstances, are indicative of a downward trend and not merely a periodic fluctuation of Plaintiff's condition.[6]  Because the ALJ's decision was supported by substantial evidence, remand is unnecessary.

The Appeals Council did not err when it refused to review Plaintiff's new evidence.

### III.

The ALJ's decision is supported by substantial evidence and the proper legal principles.  The decision of the Commissioner is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1)    the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2)    the Clerk of the Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. § 405(g).

**DONE AND ORDERED** in Tampa, Florida on this 27th day of September, 2007.

---

[6] Plaintiff further argues that due to the length of time it takes to process DIB claims, it was plausible for Plaintiff's condition to decline (Dkt. 17 at 11).  Specifically, Plaintiff argues that mounting financial difficulties and strained familial relations during this time can impact an individual's physical condition.  Nonetheless, as stated above, Plaintiff failed to demonstrate that Plaintiff's condition worsened during this time period such that she could not perform the sedentary work identified by the VE.

_____
ELIZABETH A JENKINS
United States Magistrate Judge